All right. If we could ask the clerk to please call the case. 3 24 0 4 75 consolidated with 3 24 0 4 99 and 3 24 0 5 77 Georgine Carlo and Jennifer Burr Apple leaves versus Lauren Collins appellant and James Hupke appellant. Are all the parties ready to proceed? Yes. All right, Miss Friedland. You may go ahead. Thank you. Good afternoon, your honors and good afternoon, counsel and may it please the court. My name is Jennifer Friedland and I represent the appellant James Hupke, who was a defendant in the case below. My client, Mr Hupke, is a little bit different than the other parties in this case in that he's not a family member. Um, and, uh, he is not a beneficiary of the trust. He was a family friend of the settlers who agreed to be a co trustee. Um, he has not received and does not stand to receive any distributions from this trust. Uh, Mr Hupke is the only litigant that questions the jurisdiction of this court. Um, so I think it's important to begin with that issue. Uh, the gist of this appeal, as I'm sure you know, is, um, the enforcement of the settlement agreement or a purported settlement agreement. The plaintiffs and, um, Mr. Fahey will tell you that they, um, do believe there was a settlement agreement. Uh, Mr. Novak's client, Ms. Collins, believes that there was never a settlement agreement. My client, Mr. Hupke, believes there was a settlement agreement, but that he did not agree to, um, pay any money to the plaintiffs. With regard to jurisdiction, our position is that the order of the trial court on January 24th, 2024, granting the motion to enforce the settlement agreement is not final because it's vague as to how the money judgment of $325,000 is to be applied to Mr. Hupke and Ms. Collins, meaning whether the judgment would be a joint several liability or whether it is divided in some other way or some percentage. This was not determined in, um, the emails or presented, I should say, in the emails that, um, were negotiations among... Ms. Friedland, can I interrupt? Didn't the trial court, uh, reject that argument in James's motion to reconsider? I'm sorry, reject what argument? That, uh, it was unclear whether he was jointly and separately liable. I don't know... Wasn't that raised in the motion to reconsider? It was raised in the motion to reconsider. Was the motion to reconsider denied? It was, Judge. So this subsequent motion, it's really a motion to clarify because there was already a motion to reconsider and that was denied. I filed a motion to clarify, but I did file it after the notice of appeal had to be filed for this case. But a motion to clarify wouldn't divest us of our jurisdiction. Um, well, I, I believe that if it's the order is not final, meaning that it's not, doesn't fix finality as to how the application of the judgment is applied, that that makes it a non-final order. Sorry, that was a confusing way of saying it. I understand what you're saying. Yes. Thank you, Judge. Um, and it's clear to me that you have the procedural history of the case and you have this argument down. Um, but there was subsequent briefing on the issue in the trial court, including a court order on August 21st, 2024, which stayed the money judgment until the application of liability was determined. So, you know, to be very honest, I don't, I'm not here today to say that you don't have jurisdiction. I just felt this was an important issue to raise in case it did create a jurisdictional issue. Um, because frankly, as my brief show, I don't believe there was ever a settlement agreement in which case this issue of jurisdiction is moved anyway. Now, when you say you don't believe it was a settlement agreement, it was the exact opposite position was taken by James below, right? He said there was a settlement agreement. The terms were that he was out. He didn't know what he agreed. There was a settlement agreement below. My client agreed, believed there was a settlement agreement has told me that he believed there was a settlement agreement, but that these were not the terms. So you think you're just saying is legally is the lawyer. You disagree with your clients. Well, how could there be a settlement agreement if we have three different versions of events and what had took place? So I was not there with the conversations that my client had with his former counsel. But when I meet with my client, he says, I believe there was a settlement agreement, but why would I have paid $325,000? I never received a distribution. I never, um, stood to receive one and I didn't manage the trust. So that has been his position. And frankly, that is why my response to the motion to enforce was so brief in that I believe there could be no chance a court would find a settlement agreement given that, for example, Miss Collins is the only litigant who had a sworn statement of what took place, um, in the briefing of that motion to enforce. Um, so from my perspective, it appeared that there could never have been a settlement agreement given that Miss Collins was the only litigant who had a sworn statement of what took place in the briefing of the mines. I also think it's important, um, and I'm sure Mr. Novak will touch on this is in that the communications among previous counsel to Mr. Huckie and, um, Miss Collins, a settlement agreement being drafted, um, and that never came to pass. They've never signed anything. And, um, the case law out there is that if it's contingent on that, and this is the, um, Chelton case, marriage of Chelton, 153, 11, 3D, 810, second district, 1987, um, where that, um, that there's that condition, there has to be a signed agreement for the clients to have reached an agreement. So I do, yes, my client believes there's a settlement agreement. He wanted it enforced to the extent that this litigation would end, but he did not agree to pay the $325,000, um, that Mr. Fahey believes that he agreed to. Um, this question of no settlement agreement versus material questions as to the terms of a settlement agreement, I mean, don't we have potentially emails knocking around out there that might speak to the finality of terms and the actuality of an agreement that were never discovered because the motion to quash was denied when the judge rendered judgment, I do believe that there's probably a lot more information out there. And frankly, I haven't seen it either. Um, I did not file that motion to quash. So I, I do believe that that would have, um, been, it would have been a very different outcome likely here. Had there been discovery conducted and an evidentiary hearing had justice Holdridge or justice Peterson? No questions for me. Thank you. Thank you, Ms. Friedland. You'll have an opportunity in rebuttal. Mr. Novak. Thank you. Uh, good afternoon, justices. Uh, good afternoon council. Uh, may it please the court. Uh, my name is Steve Novak. I represent, uh, the other appellant in this case, Lauren Collins. Um, and I, I suppose I can, I can pick up pretty much where Ms. Friedland left off, um, because it's, it's our position that essentially, um, you know, the, that there was no settlement agreement because that settlement agreement was contingent upon the, the drafting and the execution of a, of a written document, a written settlement agreement, um, for better or worse, I wasn't involved in any of the, the trial court proceedings. But I, I agree that I imagine that there is quite a bit of, of information out there, whether it be written communications or I know in some of the, you know, some of the cases that we cited, you know, depositions. Um, obviously people have knowledge of exactly what went on, uh, between, you know, the lawyers, between the lawyers and the clients, but I, I, I don't necessarily think that we have to go there because I think what we do have, um, shows that there were contingencies and probably the ultimate contingency was the, the existence of a written settlement agreement. Um, that the emails that we have, um, that formed the basis of the purported agreement that the trial court found to be enforceable, um, I believe are these, these three emails between, you know, the attorney for the co-trustees and the attorney for the petitioners between July 7th and July 10th. And, you know, when I look at those, I see that as it stood on July 10th, there were contingencies on both sides. Um, there was the email from Ms. Weissbluth, which said that, you know, that this, the entire thing was, was contingent on, I believe she says the review of a written settlement agreement and releases, which is perhaps an exact language. But when you combine that with then one of the follow-up emails from the petitioners council, which says that, you know, it's basically contingent on the review of the, the trust's finances, you know, as of July 10th, at least what we, you know, what we have and what's in the record, you know, both sides could apparently back out at that point. And I think what, what then kind of. Well, the trust finance, just to be clear, the trust finances contingency was just, everybody understands that the dollar amounts are as represented and that the tax issues have been resolved. I mean, short of that, you're not talking about any substantive review. I would agree with that. But I, and I, and I do think that, yes, that if, if, you know, the petitioners, something a foul, you know, were found within the financials, then, you know, they'd be seeking to, you know, all these negotiations that already took place, they would, you know, their position would be that, you know, there was no agreement, you know, because of the, the failure of that detail, you know, those representations to be borne out at a later time. And however, I, I also want to just draw the, the court's attention to that, that agreed order from August 10th, which, you know, is an expression of, I would suppose the, the, the understanding that the parties had with respect to these negotiations. I mean, it flat out says that the agreement is subject to the execution of a written settlement agreement. And as I, I stated in my brief, I'm not quite, you know, that's as clear as it gets in my mind, as far as, you know, an expression of the party's intent as to what the, you know, was this in fact, a conditioned precedent to the, to, to the agreement as a whole, because I think the cases, you know, bear out that, you know, you can have as much negotiations as you want and you can have as much agreement as you want, but if there is a failure of a, you know, of a contingency or of a conditioned precedent, then there is no agreement. And so again, I think that that kind of later indication of the party's agreement is encapsulated perfectly in that agreed order, which flat out states that, that the agreement is subject, subject to the execution of a, of a written settlement agreement. So that is why, you know, my client and I believe that there, there is no enforceable settlement agreement here, because the record, you know, what, what I had to look at, and I believe what the court has to look at, you know, clearly shows that, that that's something that had to be done and for whatever reason it did not happen, so therefore, for better or worse, there is no settlement agreement. So unless there's any other questions, I have, I have nothing else to add. Justice Holdren. Sure. Justice. No, no questions. Thank you. Thank you. All right. Thank you, Mr. Beck. You too will have an opportunity in rebuttal. Mr. Fahy. Thank you, Justice Brennan. Good afternoon, Justice Brennan, Justice Holdren, and Justice Peterson, counsel of record. And may it please the court. My name is Kyle Fahy. I represent Jennifer Burr and Georgine Carlo, the petitioners in the underlying action that was pursued against defendant James Hupke and Lauren Collins as co-trustees of, of the two subject trusts. With respect to the facts, Your Honor, you know, I just want to address Ms. Friedland's remarks concerning James Hupke's status as a non-family member, status as a non-beneficiary. What's important to note here, Your Honors, is that James Hupke was a co-trustee of this trust. He accepted the duties of a co-trustee and he acted in that role along with Lauren Collins. Further, Your Honors, critically here, James Hupke and Lauren Collins, for better or worse, chose to be represented by the same attorney. They were represented by joint counsel throughout the approximately two years of underlying litigation. So it's, although he tries to extricate himself from liability, it doesn't, you know, his status as a non-beneficiary doesn't change the fact that he's a co-trustee and he shares those fiduciary duties. Under what plan, under what plan does Mr. Hupke agree to be jointly and severally liable for $325,000 when Lauren has said that she has the money she's taken, it's preserved, and she's made more money on it, and she's in a position to repay it? Why, why would he subject himself to that liability under any circumstance? Well, Justice, for one, I can't speculate as to what the thoughts are going through James Hupke's head. But two, um, the craziness of it, to the question, let me just finish. I guess to put it more bluntly, the, the idea that somebody would rationally take that position, it doesn't make any sense to me. So that suggests to me that that could never have been the agreement, and that's my question. Well, Your Honor, what I think is important about your question is that I think you're referencing an agreement between James Hupke and Lauren Collins as to who would pay. You, you reference an email about Lauren Collins having the money and setting, having set aside money. I personally have never seen an email to that effect. And Ms. Friedland in the trial court sought to, um, proffer, uh, personal correspondence for in-camera review, um, which we noted would be impermissible if they're going to, um, you know, use attorney-client privileges to assert there was no deal, they can't turn around and, and hide those same communications. So to answer your question directly, I don't know specifically, uh, what James Hupke was, was saying, but what I do know is that James Hupke and Lauren Collins' attorney told us and our clients, uh, that they collectively would be responsible for paying $325,000 at which time the case would be, would be resolved. Well, doesn't the Winger case suggest that the attorney's authority to settle is not boundless, it depends upon Mr. Hupke's agreement, uh, especially as it relates to a settlement as opposed to a  That's true, Your Honor. But I think that there's ample case law out there, uh, that even in the absence of express authority, clients can be bound, uh, by the attorney's actions, uh, under, um, uh, apparent authority, uh, logic. So you, you asked, uh, for, uh, subpoenas and discoveries that relates to any other communications between Hupke and Collins vis-a-vis their attorneys as to this question about, you know, the agreement, whether there was an agreement and its terms, um, wouldn't it make more sense for us to reverse judgment and remand it back for that process to happen as opposed to what you're asking for now, which is to say that there's an agreement and all these terms are part of the agreement? I do not think that would be appropriate, Judge. And primarily that's because the agreed upon bargain here is the end of the case in exchange for $325,000 and releases to the defendant appellants. And what you have here is now two defendant appellants who are disagreeing as to what, uh, what each of them is bound by under the agreement that trial court found to exist. So, uh, in my view, your honor, the appropriate, uh, the appropriate action is to affirm the trial court's rulings, which, uh, specifically granted the motion to enforce on the terms specifically set forth in therein and make it James Hupke and Lauren Collins responsibility to remit the $325,000 payment, if there are privileged conversations between these two co-defendants about who's going to come up with the money, your honor, I don't think that that has anything to do with my clients, uh, the, the reality is if they had a side agreement where Ms. Collins was going to remit payment, uh, Mr. Hupke still doesn't get a release until that payment is made. Um, so what you have here is, is defendants who acted at their own peril and chose to, uh, be jointly represented by a single attorney and then crying foul, uh, when that attorney, uh, enters an agreement that, that can bind both of them, um, and at the same time, it, it binds, uh, both of them to, uh, secure the release that they would be entitled to under the agreement. Well, what do you say about the contingencies? So both in the email and in the, uh, the subject to language in the, uh, order. Yes. So with respect to the, I think that, um, calling those express contingencies that were required to be fulfilled is a misreading of the party's intentions and it's a misreading of their objective actions after the settlement was reached. So first your honor, um, and again, on this point, the defendant appellants here are asking this court to, uh, review that email extraordinarily narrowly, um, which reads that, that the agreement was contingent upon quote, seeing a draft settlement. Um, so they're asking the court to, uh, apply a contingency, a very term, but then generally we're using the word seeing to mean, uh, agreeing to all the new terms or whatever is in some, some subsequent agreement, agreement. Black's Law Dictionary offers two definitions of a contingency. One is an event that may or may not occur in the future, a possibility. Two is the condition of being dependent on chance, uncertainty. There is nothing in either the agreed order or the emails between council that leaves the question of a formal setter settlement agreement as a possibility or an uncertainty. It is an agreement that we are going to set forth these terms and memorialize them in an agreement. Well, I love Black's Law Dictionary, but what about in remarriage of Chatelain? Um, so Chatelain, Your Honor, in that case, um, the court, it did reference that the record also shows the parties continued hearing the case in order to reduce the agreement and execute it. But here, Your Honor, the agreed order, um, was for one thing entered after, um, my office had already provided councils, um, a copy of a memorialized draft settlement agreement. Um, that occurred on July 31st. So there's no repudiation of that agreement after that. Uh, we appear in court and the agreed order has two separate clauses. One, it says that the parties have reached a settlement agreement that resolves all issues. And two, it's being memorialized by a written agreement. And that's exactly what was occurring, um, throughout this case. July 30th. Memorialized draft agreement? No. I'm sorry, Your Honor. Was there a question? No, please continue. Where is, is that memorial, is that draft agreement in the record? Uh, I do not believe it is, Your Honor. Well, then it's probably not something we should be discussing because I didn't remember seeing it. What, what happened, Your Honor, is we sought to, we sought to enforce strictly the terms that were agreed upon in writing in email, because what we have is, uh, in response to the motion to enforce, Ms. Collins attached an email between herself and her attorney. Uh, I believe the date on that email is August 22nd, uh, which is again, after the August 9th agreed order. And in that email, Ms. Collins is telling her attorneys that the draft was different than what she quote, agreed to. Um, so I, I don't think that there's any basis for Ms. Collins to assert that her attorneys didn't have express authority or even apparent authority, um, to settle on her behalf and, um, for that matter, Judge, the, we did not seek to enforce any, um, draft agreement that she contended was different from the terms that were agreed to. Well, can I just ask about the logic of what you're just saying? Because now you're suggesting that the draft was something different than the email, which would suggest that there wasn't an agreement. Your Honor, I'm sorry, that that's not what I meant to suggest. So let me try and clarify here. Uh, my, my view is the draft that we provided to Ms. Collins counsel was a memorialization of the terms that were reached. Ms. Collins counsel to her email is completely, is grieving that she thinks that that draft is different. It's different from what she agreed to. Okay. And. But we don't have, we don't have that draft. Correct. So, and we didn't seek to enforce that draft. We only seek to enforce, uh, the plain language of what was agreed to. And so with respect to these, um, contingencies, uh, your honor there there's, again, there's also significant case law, um, and that's the, uh, the County line nurseries case, um, as well as the transportation insurance, Covey Island food stores case. Um, all of those cases reflect that, um, the memorialization of terms that are agreed to is a ministerial act in, in furtherance of a settlement. It is not a, a contingency that allows a party to back out of a settlement at any point in time up until they sign the document. Um, so for example, judge, the terms of settlement also include the provision that there's to be a payment of $325,000. The settlement isn't contingent upon that. The settle, that is a term of the agreement itself. Um, and it is an obligation for the parties to carry out. So from my perspective, judge, once the parties reach an agreement and agree to memorialize that agreement in writing, that is the agreement and they have an obligation to follow the terms that they have agreed to. Uh, and that's what we sought the court to enforce. And that's what I believe the court did enforce. Um, and, uh, just going back to, um, addressing the jurisdictional issue. Uh, I do believe the court has jurisdiction. Um, the, the motion to clarify, uh, filed by Mr. Hupke was actually filed 46 days after the, um, the motion to reconsider was denied. Um, so it's not a timely post-judgment motion. Um, and that therefore it doesn't deprive the court of jurisdiction. Um, if the justices have any further questions, I'm happy to, uh, answer them or, uh, rest. No questions. No questions. All right, Mr.  Thank you very much. Thank you, Justice. Ms. Friedland, rebuttal. Um, yes. Um, your honors, the only, um, point I wanted to make was actually in response to Mr. Fahy's most recent, um, mention of the motion to clarify being filed over 30 days after, um, the judge or the motion for reconsideration. We were before Judge Braun, who was sitting instead of Judge Anderson. And, um, I raised this issue of how is this supposed to, how is this order supposed to apply to the clients? Because even if Judge Anderson granted the motion, there's still no, um, record or determination of whether this is joint and several liability or not. Or if that's what Judge Anderson believed, I don't know. Um, and Judge Braun invited us to file a briefing on the issue of joint and several liability. And so I just wanted to explain how that had come about. And that is why, um, the, uh, he stayed the order, um, pending determination of that joint and several liability issue. Um, with that, I will rest unless you have questions. No questions. I have none. Thank you. Uh, Mr. Novak. Thank you, Justice. Um, I also just have one brief point to make. Um, and that's, uh, during counsel's, uh, argument, um, he used the word memorialize a lot, um, and I think it was even described as, as being in the agreed order that I referenced earlier. Um, and the exact language from that agreed order is, is I agree. The first part of the sentence is that the parties have reached a settlement agreement, but the second part is not, they've, they're going to memorialize it. It's subject to execution of a written settlement agreement. Um, and I think, uh, as I, I stated earlier that, that that's not just a, a mere agreement to agree to further agree to memorialize these things in a settlement agreement. Um, it, it, it establishes that the parties intended, um, that, that there is in fact, a, a contingency that needed to be satisfied before an agreement existed in the first place. Um, and then, you know, again, I would go back to the cases that say, you know, no matter what type of negotiations you've had before, um, you know, Charlton, I think was a, there was a full on settlement conference in front that the court was involved in, but because the record reflected that there was the intent of the parties, um, to render everything to writing because that didn't happen, uh, and I, you know, I believe that kind of the case describes it as well, the trial judge thought there was an agreement, but because there wasn't a settlement agreement, you know, that there was no agreement at all. Um, so I, I believe that that's what happened here. And this, this particular agreed order is the most clear expression of the part, both parties intent when it comes to that condition. Um, so I, I have nothing further and I rest as well. No further questions. All right. Uh, the court thanks, uh, all three, uh, lawyers for spirited, uh, discussion. We will take the matter under advisement and render a decision in due course. Uh, court is adjourned until the next argument. Thank you. Thank you. Thank you.